# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR MANUEL VITELA, | Case No. 1:18-cv-00037-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 14, 15, 16) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Victor Manuel Vitela ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from high blood pressure, gastroesophageal reflux disease ("GERD"), a hiatal hernia, a respiratory disorder, radius/ulna fracture of the left wrist, diabetes, and a cardiovascular disorder/non-obstructive coronary artery disease. For the reasons set forth below,

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 8.)

Plaintiff's Social Security appeal shall be denied.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title XVI application for supplemental security income on January 8, 2014. (AR 88.) Plaintiff's application was initially denied on April 2, 2014, and denied upon reconsideration on September 19, 2014. (AR 101-104, 110-114.) Plaintiff requested and received a hearing before Administrative Law Judge Nancy M. Stewart ("the ALJ"). Plaintiff appeared for a hearing on July 18, 2016. (AR 34-77.) On October 31, 2016, the ALJ found that Plaintiff was not disabled. (AR 17-28.) The Appeals Council denied Plaintiff's request for review on November 1, 2017. (AR 1-3.)

### A.    Hearing Testimony

Plaintiff appeared with counsel and testified at a hearing on July 18, 2016. (AR 38-65.) Plaintiff was born on October 11, 1963, and was 52 years old on the date of the hearing. (AR 38-39.) Plaintiff had a twelfth-grade education. (AR 39.) He was 5 feet 9 inches tall and weighed 187 pounds on the date of the hearing. (AR 39.) Plaintiff has a driver's license and can drive. (AR 65.) He lives with his 82-year-old mother. (AR 64.)

Plaintiff is right handed and fractured his left wrist requiring surgery. (AR 39-40.) Plaintiff stopped working in 2007. (AR 40.) From 2001 until 2007, he was a fork lift driver doing shipping and receiving. (AR 40.) The most he physically lifted would be five to fifteen pounds. (AR 49.) He was sitting when he operated the forklift. (AR 49.) In 2001, Plaintiff was driving a forklift for a nursery. (AR 49.) He was working part time. (AR 50.) In 2004, Plaintiff was working seasonally for the Sanger Citrus Association driving a forklift and doing some sanitation. (AR 50.) He would unload fruit from the bins as they came in. (AR 50.) He would sit as he drove the forklift to unload the fruit and load the empty bins back onto the truck. (AR 51.) He would clean up the area, picking up leaves, sweeping. (AR 51.) He would hose down the rooms. (AR 52.) In 2006, Plaintiff had a job where he would lift orange boxes that weighed about 25 to 30 pounds. (AR 53.)

/ / /

Plaintiff worked for a short time in June 2013.  (AR 41.)  He was supposed to be going seasonal, but he got sick.  (AR 41.)  Plaintiff did not work from 2007 to 2013 due to his asthma and bronchitis.  (AR 42.)  He was drawing unemployment in 2008 and 2010.  (AR 42.)  He was looking for work during this time.  (AR 42-43.)

Plaintiff hurt his wrist in June 2014, and had surgery September 24, 2015.  (AR 43.)  Plaintiff is seeing an orthopedist and is going to be getting some treatment for his nerves.  (AR 43.)  He might have to have surgery again.  (AR 43.)  Plaintiff had a carpel tunnel release on September 24, 2015, and had surgery to fix a fracture on his wrist.  (AR 44.)  When he fractured his wrist, his blood sugar was too high for surgery.  (AR 44-45.)  He had a splint for a month and then was in a cast for two and a half months.  (AR 44-45, 63.)  He went to therapy after that and got a second opinion because he did not think his hand was doing good.  (AR 63.)  It was at that time he had surgery.  (AR 63.)  It was very uncomfortable and stressful to have to wear a cast.  (AR 63.)  Plaintiff wears a wrist brace at night.  (AR 63-64.)  He has a black elastic brace for support.  (AR 64.)  He has a plastic brace that he wears every night to keep him from bending his elbow so that his hand will not be stiff and hurting in the morning.  (AR 64.)

His blood sugar is up and down.  (AR 45.)  It is in control most of the time.  (AR 45.)  Plaintiff has asthma but is not receiving any treatment.  (AR 45.)  Plaintiff was hospitalized for pneumonia and asthma.  (AR 45.)  He uses an Advair inhaler twice a day and a Ventolin inhaler once a day.  (AR 45-46.)  The inhalers do help his asthma symptoms.  (AR 47.)

Plaintiff has never been diagnosed but there are times when he feels depressed.  (AR 47.)  He has never received medication for depression.  (AR 47-48.)

Plaintiff has limited use of his left hand.  (AR 54.)  Plaintiff can grasp and grab objects.  (AR 54.)  The thumb on his left hand goes in, and his pinky is enlarged and numb.  (AR 54.)  Plaintiff can grasp a glass of water.  (AR 55.)  Sometimes he will drop things with his left hand.  (AR 55.)  He will feel the numbness and it just gives way.  (AR 55.)  Plaintiff has less strength with his left arm than his right arm.  (AR 55.)  He can lift two to three pounds with his left arm but more with his right.  (AR 55.)  He uses his forearm for support because he cannot grasp with the hand.  (AR 55.)  With his left hand only he can lift between three to six pounds.  (AR 56.)

He would drop anything heavier than that because it would hurt his wrist. (AR 56.) He can lift a box with both arms because he uses his forearm and right hand. (AR 56.) He can write and can pick up light objects with his left hand but has to use four fingers and not his thumb. (AR 56-57.)

At times, Plaintiff has pain in his left elbow. (AR 57.) The pain in where he had surgery for the cubital tunnel release and ulna transposition. (AR 57.) After surgery, Plaintiff attended physical therapy. (AR 58.) The physical therapy did not help and his left arm is getting stiffer. (AR 58.) The surgery helped for a while, but now it is acting up again. (AR 58.) He will be having tests the following month. (AR 58.)

Plaintiff gets short of breath when he is talking. (AR 59.) He gets short of breath when he is making the bed, vacuuming, or walking. (AR 59.) He will get short of breath after ten to fifteen minutes of activity. (AR 59.) He uses a rescue inhaler after he walks a block or a block and a half. (AR 60.) Plaintiff also gets chest pains and wheezing/bronchitis. (AR 60.) Smog, chemicals, dust and fumes affect his breathing. (AR 60.) Plaintiff's diabetes and hypertension are under control. (AR 60.)

On an average day, Plaintiff gets up, takes his medication, and eats. (AR 61.) He will do some cleaning, laundry, and cooking. (AR 61.) He can do laundry for about 30 minutes and cook for 5 to 10 minutes. (AR 61.) Plaintiff exercises his hand with a mush ball and does other exercises that he was given at physical therapy. (AR 61.) Plaintiff does his own cooking, laundry, and will help his mom out as much as he can. (AR 65.) He does dishes and will wash her car. (AR 65.)

Plaintiff does not have any side effects from his medication, but he does have a reaction if he drinks milk and takes Mylanta. (AR 62.) Plaintiff takes insulin for his diabetes and checks his blood sugar three times a day. (AR 62.)

**B.   ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff has not engaged in substantial gainful activity since the application date of January 8, 2014.

- Plaintiff has the following severe impairments: a respiratory disorder, radius/ulna fracture of the left wrist, diabetes, and a cardiovascular disorder/non-obstructive coronary artery disease.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform a range of work at the light exertional level as defined in 20 C.F.R. § 416.967b. Specifically, with the dominant right hand he can lift and carry 20 pounds occasionally and 10 pounds frequently and push and pull within these same limitations. With the left hand alone he can only lift carry push and pull 5 pounds occasionally and frequently but with the assistance of the right hand he can lift carry push and pull 20 pounds occasionally and 10 pounds frequently. Plaintiff can stand and walk six hours in an eight-hour workday and sit six hours in an eight-hour workday. He is unable to crawl or climb ladders, ropes, or scaffolds, and needs to avoid concentrated exposure to respiratory irritants such as fumes, dust, gas, odors, and chemicals. Turning back to the upper extremities, with the non-dominant left upper extremity he is limited to frequently handling and feeling, occasionally fingering, and he is precluded from using the left thumb to pick things up. Plaintiff is also unable to perform forceful gripping and grasping with the left upper extremity but he has no limitations on his dominant right upper extremity.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on October 11, 1963, and was 50 years-old which is defined as an individual closely approaching advanced age on the date the application was filed.

- Plaintiff has at least a high school education and is able to communicate in English.

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can

perform.

- Plaintiff has not been under a disability as defined in the Social Security Act since the date the application was filed, January 8, 2014.

(AR 22-28.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g).

In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff argues that the ALJ erred by failing to articulate legally adequate reasons to reject the opinion of the treating physician and clear and convincing reasons to reject Plaintiff's testimony. Defendant counters that the ALJ tailored a very specific and restrictive residual functional capacity assessment to address the limitations in Plaintiff's upper left extremity and provided specific and legitimate reasons why the record did not evidence a greater level of restriction citing the evidence underlying her decision.

**A.      Treating Physician Opinion**

Plaintiff contends that the ALJ did not assess Plaintiff's ability to work during the thirteen months between when he fractured his wrist until he had surgery. Plaintiff further contends that the ALJ did not adequately explore the limitations of his left wrist on his ability to

perform work. Plaintiff argues that in July 2016, a treating physician from Fresno County assessed that Plaintiff was unable to perform work due to limited use of his hands, opining that Plaintiff would be able to return to work on January 13, 2017. Plaintiff asserts that there are no other medical opinions assessing Plaintiff's ability to work after his fracture. Plaintiff further asserts that if the ALJ found that the treating physician's opinion was inconsistent with the record he was required to re-contact the physician to determine Plaintiff's hand limitations. Plaintiff argues that the ALJ found the record insufficient because he gave little weight to all the opinions in the record.

Defendant argues that the ALJ considered the evidence of Plaintiff's limited range of motion, reduced sensation in his finger, muscle wasting and atrophy, as well as the medical record evidencing that during this same time period he was in no acute distress, had good range of motion in his left-hand fingers, full motor strength, normal reflexes, equal and symmetrical extremities, and intact nerves and blood vessels with no tenderness, numbness, clubbing, cyanosis or edema. Further, following his ulnar-nerve procedure on September 24, 2015, Plaintiff's ulnar-nerve symptoms improved and he had a slight reduction in motion in his left wrist, some loss of sensation in his left hand little finger and some atrophy, but sensation otherwise remained intact and Plaintiff had no digital malalignment or rotational deformity, his composite range of motion showed that he could make a full fist into the palm, flex, and extend his fingers and his motor skill was intact. Further, Defendant argues that the form completed by the physician does not constitute a medical opinion within the act because it states that Plaintiff is temporarily unable to work due to limited use of his hands. The report does not address what Plaintiff retains the ability to do or provide concrete functional limitations. The opinion that Plaintiff is unable to work is reserved for the Commissioner and does not qualify as a medical opinion. Defendant also contends that the ALJ did not have any duty to further develop the record and there is no requirement for an ALJ to re-contact a treating physician.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded

more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)). The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

The ALJ addressed a general relief form completed by an unidentified physician on July 13, 2016. (AR 25, 523-524.) The physician checked a box stating that Plaintiff has a physical or mental incapacity that prevents or substantially reduces his ability to engage in work, training and/or provide necessary care for his children. (AR 25, 523.) The condition that reduces Plaintiff's ability to work is limited use of the hands. (AR 25, 523.) The physician stated that Plaintiff is unable to work. (AR 25, 524.) The date of onset of the condition was August 2014, and it was a temporary disability with Plaintiff expected to be released to work on January 13, 2017. (AR 25, 524.)

The ALJ found that the opinion that Plaintiff was unable to work is an issue reserved for the Commissioner. (AR 25.) While the ALJ must consider all medical evidence, "[t]he treating physician's opinion is not" "necessarily conclusive as to either physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). But the ALJ may not simply reject the treating physician's opinion on the ultimate issue of disability. Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir.). To reject the contradicted opinion of the treating physician, the ALJ must provide proper reasons that are supported by substantial evidence. Ghanim, 763 F.3d at 1161.

Under the regulations, a medical opinion is a statement from an acceptable medical source that reflects judgment about the nature and severity of the claimant's impairments. 20 C.F.R. § 416.927(a)(1). Opinions on some issues are not medical opinions, but are opinions on issues reserved for the Commissioner. 20 C.F.R. § 416.927(a)(1). One such issue is that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d)(1). The ALJ does not give any special significance to opinions on issues that are reserved for the Commissioner. 20 C.F.R. § 416.927(d)(3). Therefore, the ALJ properly gave little weight to the opinion that Plaintiff was unable to work.

The ALJ still considered the opinion giving it little weight because it was conclusory and inconsistent with the evidence. (AR 25.) Plaintiff contends that the physician's decision not to check any boxes on the form describing Plaintiff's limitations or work descriptions indicates that he thought Plaintiff limitations exceeded the choices presented. However, the form contains an "other" box with space to write in other restrictions or work limitations. (AR 524.) Therefore, the Court does not find Plaintiff's argument persuasive. The ALJ discounted the report because it did not provide function by function assessment of Plaintiff's ability and is based upon a different standard of disability. (AR 25.) It was not unreasonable for the ALJ to discount the opinion because it did not provide any functional limitations and was based on a different standard of disability.

The ALJ further considered the medical evidence finding that the objective evidence does not support a finding of disability based on limited use of Plaintiff's hands as a report showed improvement of the ulnar nerve symptoms after surgery (AR 25, AR 495.) On January 6, 2016, Plaintiff was seen in the cardiology clinic for follow up. (AR 491.) The record notes that he was seen by Ortho on October 15, 2015, with good healing. (AR 491.) At the October 15, 2015 visit, Plaintiff reported he was feeling well and having minimal pain. (AR 489.) He stated his nerve related symptoms had improved and he was not having hand numbness, tingling, or weakness. (AR 489.) The record states "[o]f note during wrist exam under anesthesia he was found to have WF/WE 40/40." (AR 489.) Plaintiff was able to make a complete fist and open hand. (AR 489.) At the January 6, 2016 visit, Plaintiff was found to have normal sensation and

proprioception with 5/5 motor strength in upper and lower extremities. (AR 493.)

Additionally, the ALJ found that there are no reports of any limitations of the upper right extremity. (AR 25.) Review of the record during this time period finds substantial evidence to support the ALJ's finding that Plaintiff has no limitations of the upper right extremity. Significantly, on July 30, 2015, after Plaintiff was found to have limited range of motion in his left wrist, the record notes that Plaintiff is able to work without limitations from an orthopedic standpoint. (AR 471.)

Plaintiff argues that the ALJ did not properly consider the medical evidence related to his hand and wrist limitations after he fell on August 11, 2014. However, the ALJ specifically considered that Plaintiff fell and suffered a commuted radius/ulna fracture of the left wrist; and that an x-ray taken on August 28, 2014, showed displacement and angulation of the fracture. (AR 24, 434.) A progress report dated September 29, 2014, indicated that Plaintiff chose not to have surgery but to accept the fracture and treat it conservatively. (AR 24, 433.) On this visit, it is noted that Plaintiff's fracture is still not completely consolidated. (AR 433.) Plaintiff was found to be neurovascularly intact, although his fingers were somewhat stiff secondary to immobilization. (AR 433.)

In January 2015, Plaintiff had decreased range of motion and was unable to make a full fist with the left hand, but neurovascularly it was intact. (AR 24, 428.) Plaintiff reported at this visit that this range of motion was somewhat improved and he was attending physical therapy. (AR 428.) Plaintiff's swelling and pain had improved. (AR 428.) His sensation had returned, but he had a fair amount of stiffness. (AR 428.) Dorsiflexion was only 20 degrees and volar flexion was only 20 degrees. (AR 428.) Plaintiff was unable to make a full fist, but neurovascularly he was intact. (AR 428.) Plaintiff was to finish his physical therapy program. (AR 428.)

The ALJ further considered that an x-ray of the hand taken on June 8, 2015, showed a healed distal radial fracture, but degenerative changes of the radial carpal joint were developing. (AR 24, 465.) Plaintiff was diagnosed with a closed Colles' fracture of the left radius with malunion. (AR 24, 469.) On June 18, 2015, Plaintiff reported that he was experiencing stiffness

in the wrist and pain after extensive use. (AR 467.) Plaintiff exhibited limited wrist extension with significant intrinsic muscle wasting and a sensory deficit of the ulnar nerve, but an x-ray of the left hand taken the same day showed a healed fracture of the distal radius with no fractures or dislocations. (AR 25, 469, 518.)

The ALJ considered that in August 2015, Plaintiff complained of a limited range of motion in the left wrist with interval clawing of the fifth digit on the left hand. (AR 25, 472.) On examination, Plaintiff had no gross deformity to the wrist. (AR 472.) His wrist extension was 5 degrees active and 10 degrees passive, with flexion of 15 degrees. (AR 472.) There was flexion contracture of the little finger and decreased sensation in ulnar distribution. (AR 472.) Plaintiff was to undergo aggressive physical therapy for improved range of motion of the wrist and was to be scheduled for a cubital tunnel release of the ulnar nerve transposition and wrist MUA. (AR 474.)

On September 24, 2015, physicians performed a left elbow anterior intramuscular ulnar nerve transposition with examination of the left wrist under anesthesia. (AR 25, 483-488.)

In January 2016, Plaintiff was recovering well with no signs of infection, his ulnar nerve symptoms were improving. (AR 25, 497-498.) On January 21, 2016, Plaintiff was seen by ortho stating that he was doing well overall and his pain was well controlled. (AR 497.) Plaintiff was sent back from physical therapy for evaluation because he was reporting sharp shock like pain in his left elbow that had started two weeks prior. (AR 497.) Plaintiff reported intermittent numbness in his elbow and tingling in his left hand. (AR 497.) Plaintiff also reported numbness in the fifth finger of the left hand. (AR 497.) Examination of the fingers notes "warm, well perfused, rapid cap refill, 2+ radial pulses." (AR 497.) Motor function examination reports "5/5 thumb extension (EPL, PIN from radial n.), cross fingers IF & LF (ulnar n.), ok sign (FPL & FDS/FDP from AIN from medial n.), ER, EE, SA intact. Limited WF, WE. Limited supination of elbow." (AR 498.) Sensory function notes, "SILT in proximal thumb (radial n.), SF (ulnar n.), tip of LF and IF (median n.), deltoid (axillary n.) areas intact." (AR 498.) It is noted that Plaintiff is doing well and is neurovascularly intact. (AR 498.)

///

The ALJ also considered that a physical examination on January 28, 2016, was generally unremarkable (AR 25, 501).

The ALJ found that subsequent reports did reveal limited functioning of the left hand with numbness, tingling, and weakness in the left upper extremity. (AR 25, 536.) On June 9, 2016, Plaintiff was seen in the orthopedic clinic reporting worsening function of his left hand, numbness of his palmer left little finger, tinging and weakness of his left upper extremity that involved the left shoulder that had been worsening over the last two months. (AR 536.) Examination of the left upper extremity revealed no digital malalignment or rotational deformity. (AR 537.) Plaintiff had slight contracture of the left little finger and some atrophy to the dorsal surface of left hand. (AR 537.) Sensation was intact to light touch and 2-point discrimination at 6mm R/M distributions loss of 2-point discrimination at L little finger palmar surface. (AR 537.) Plaintiff's limb was warm and well perfuse including fingertips w/ brisk capillary refill. (AR 537.) Composite range of motion showed that Plaintiff can make a full fist into the palm and can flex and extend the digits. (AR 537.) Motor was intact to "AIN/PIN/U distributions. but a review of all systems including the musculoskeletal system done on June 30, 2016, was negative." (AR 25.) The record notes inconsistent examination of left ulnar nerve motor/sensory. (AR 537.)

In July 2016, the general relief form was completed finding that Plaintiff was unable to work due to limited use of his hands. (AR 25, 523-524.)

The Court finds that the ALJ has provided clear and convincing reasons to reject the July 13, 2016 general relief report. Further, the ALJ did consider the medical evidence following Plaintiff's fall and fracture of his left wrist. Plaintiff argues that the medical evidence demonstrates that he has limited use of his left hand, however, the ALJ considered such evidence and provided detailed and specific restrictions to accommodate those limitations.

Finally, Plaintiff argues that the ALJ erred by failing to determine how Plaintiff's limited range of motion in his left wrist would affect his ability to work. However, review of the record demonstrates that Plaintiff alleged that his inability to work was due to his hand and arm limitations.

Initially, Plaintiff claimed disability due to asthma, diabetes, shortness of breath, high blood pressure, chest pain, pneumonia, chronic bronchitis, emotional issues, and armpit and buttocks cellulitis. (AR 198, 242-250, 253.) Plaintiff's prehearing memorandum stated:

> The claimant fell and fractured his radius in August 2014. He was treated by Dr. Shantharam who casted the fracture however there was a mal-union of the left distal radius fracture. The claimant was treated with PT but experienced stiffness and numbness in the ulnar distribution. The claimant was sent for CT scans of the bilateral wrists and NCS which showed compression of the bilateral carpal tunnels and ulnar nerve. There was limited ROM and interval clawing of the 5th digit. On September 24, 2015 cubital tunnel release with ulnar transposition and MVA was performed. Initially the claimant felt better with no numbness or tingling. However on 1/21/16 sharp pain in the left elbow returned with numbness in the left hand.
>
> Opinion Evidence
>
> Tomas Rios MD performed an IMCE on 8/6/14. He found no limitations however his examination was performed prior to the claimant's radius fracture.
>
> Argument
>
> It is submitted that the claimant's combination of impairments prevent him from performing any type of SGA. The claimants left upper extremity remains problematic and his diabetes and asthma are not well controlled.

(AR 281-282.)

At the July 18, 2016 hearing, Plaintiff testified that he fractured his wrist and had carpal tunnel surgery. (AR 44.) Plaintiff testified that he had limited use of his left arm. (AR 54.) He has problems with the nerves in the fingers of his left hand and this thumb. (AR 55.) His left pinky is numb and he cannot feel it. (AR 55.) He is able to grasp a glass of water and sometimes drops things because his left hand gives way and he feels numbness. (AR 55.) He does not have as much strength in his left arm as he does in his right arm. (AR 55.) He can lift three to six pounds with his left hand and anything heavier would hurt his wrist so he would drop it. (AR 56.) He is able to lift a box with both arms. (AR 56.) He can pick up light items with his left hand, but cannot use his thumb to pick up items. (AR 57.) He has pain in his left elbow. (AR 57.) His left arm is getting stiffer and physical therapy did not help. (AR 58.) The carpal tunnel surgery helped for a while, but it is getting worse again. (AR 58.) Plaintiff has a brace that he wears on his wrist. (AR 63-64.) He has an elastic brace that he wears at night to keep his elbow from bending so that his hand will not be stiff and hurt in the morning. (AR 64.)

In his November 22, 2016 appeal, Plaintiff argued that the ALJ erred by limiting him to frequent handling with his left hand because the non-use of his thumb would preclude his ability to pick up items.  (AR 170.)

The Ninth Circuit recently held in an unpublished case that "[t]he existence of some evidence in the medical records regarding these conditions is not sufficient to have put the ALJ and the Appeals Council on notice that [the claimant] claimed specifically that these conditions constituted severe impairments."  Harshaw v. Colvin, 616 F. App'x 316 (9th Cir. 2015).  When a claimant is represented by counsel, he or she "must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."  Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), as amended (June 22, 1999).  Here, Plaintiff did not assert that he had any specific limitations due limited range of motion in his wrist, and the ALJ considered his limited range of motion in developing the residual functional capacity assessment.  The Court finds that the ALJ did not err in evaluating the medical evidence.

**B.      Duty to Develop Record**

Plaintiff argues that the ALJ found the medical opinions in the record were insufficient because he gave then all little weight.  When applying for disability benefits, the claimant has the duty to prove that he is disabled.  42 U.S.C. § 423(c)(5)(A).  The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1150.

A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy.  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).  But, the facts in this case are not similar to other instances in which the ALJ was found to have a duty to further develop the record.  See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of physician

who indicated more information was needed to make diagnosis); McLeod, 640 F.3d at 887 (ALJ erred by failing to obtain disability determination from the Veteran's Administration); Bonner v. Astrue, 725 F.Supp.2d 898, 901-902 (C.D.Cal. 2010) (ALJ erred where failed to determine if claimants benefits were property terminated or should have been resumed after his release from prison); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D. Cal. 2006) (ALJ erred by failing to develop record where he relied on the opinion of a physician who recognized he did not have sufficient information to make a diagnosis).

Here, the ALJ did not find that the opinions in the record were inadequate to allow for a decision, but determined that the medical opinions did not adequately compensate for Plaintiff's limitations; and therefore, the ALJ provided a detailed and specific residual functional capacity assessment to accommodate Plaintiff's left-hand limitations that were more limited than the opinions provided. The Court finds that the ALJ did not err by failing to further develop the record.

### C.     Plaintiff's Credibility

Plaintiff also argues that the ALJ erred by failing to provide clear and convincing reasons to reject his testimony. Plaintiff contends that the ALJ regurgitated the medical evidence in a manner that cast doubt on the severity of Plaintiff's left-hand impairment.

Defendant counters that the ALJ set forth specific and legitimate reasons to reject Plaintiff's testimony. In particular, the ALJ noted that Plaintiff claimed to have been hospitalized when there were no records to substantiate his claim, claimed a reduced ability to talk while the record was devoid of any corroborating evidence, and claimed that his condition worsened in January 2014, while Dr. Rios evaluated Plaintiff and found generally unremarkable findings. Finally, Defendant argues that Plaintiff's argument that the ALJ disregarded evidence of Plaintiff's left upper extremity impairments is off point and unpersuasive as the ALJ found that Plaintiff had a severe impairment and provided a residual functional capacity assessment that was particularly prohibitive as to the range of work that Plaintiff was able to perform with his left upper extremity.

///

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."  Orn, 495 F.3d at 635 (internal punctuation and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015).  "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).  Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors.  Lingenfelter, at 1040; Thomas, 278 F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . .."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).  The district court is constrained to review those reasons that the ALJ provided in finding the claimant's

testimony not credible.  Brown-Hunter, 806 F.3d at 492.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms.  However, his statements concerning the intensity persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 26.)

While Plaintiff argues that the ALJ merely set forth the medical evidence as to his hand complaints, Plaintiff does not address the reasons that the ALJ provided for the adverse credibility finding.

The ALJ found that Plaintiff's statements and allegations are not fully consistent with the medical evidence.  (AR 26.)  As an example, the ALJ stated that Plaintiff alleged that his ability to talk was affected, but there is no objective evidence to support this.  (AR 26.)  The ALJ cites to an undated adult function report in which Plaintiff stated that his ability to talk was affected by his conditions.  (AR 247.)  In explaining how conditions affect the items he checked, Plaintiff states not a lot, he gets tired very fast because of his asthma.  (AR 247.)  As relevant to this issue, Plaintiff also stated in the form that his conditions affect his ability to work because he has shortness of breath, wheezing, asthma, and bronchitis.  (AR 242.)  On February 10, 2014, Plaintiff's sister completed a third-party function report in which she stated that anything that causes Plaintiff to overexert will affect his lungs (chronic bronchitis and asthma).  (AR 218.)  The ALJ noted the evidence in the record that Plaintiff had shortness of breath and had been diagnosed and treated for asthma and bronchitis.  (AR 24.)  Plaintiff's shortness of breath due to his asthma and bronchitis could reasonably be expected to affect his ability to talk.  Therefore, this is not a clear and convincing reason to reject Plaintiff's credibility.  However, any such error would be harmless if the ALJ provided other clear and convincing reasons for an adverse credibility finding.  Burch, 400 F.3d at 679; Molina, 674 F.3d at 1115.

The ALJ also found that Plaintiff's allegations that he was hospitalized on October 1, 2012, and again on January 16, 2014, for three to four days due to asthma were inconsistent with the evidence in the record.  (AR 26.)  There was no evidence that Plaintiff was hospitalized on October 1, 2012.  (AR 26.)  Although Plaintiff did report for a blood check on January 16, 2014,

and was seen on that date, but he did not stay overnight. (AR 26.)

Review of the record shows that there is a hospital stay in May 17, 2013, in which Plaintiff appeared at the emergency room complaining of shortness of breath associated with chest pain while he was working in the yard. (AR 295, 379.) On pulmonary examination Plaintiff had normal effort and breath sounds. (AR 289.) He was in no respiratory distress, and had no wheezes or rales and exhibited no tenderness. (AR 289.) He was admitted for chest pain and had a cardiac work up. (AR 291, 299, 372, 344-345, 376-378.)

Plaintiff was also admitted as a 5150 on November 23, 2013, after having a fight with his mother and stating he wanted to hurt himself. (AR 327-328.)

There is no evidence in the record that Plaintiff was hospitalized due to his asthma and this is a clear and convincing reason to reject Plaintiff's testimony.

The ALJ also found that Plaintiff's statement that his condition worsened beginning January 9, 2014, was inconsistent with Dr. Rios's generally unremarkable examination findings from August 6, 2014. (AR 26.) Plaintiff completed a report stating that his conditions had worsened since January 8, 2014. (AR 253.) He stated that his bronchitis is chronic, over exertion causes him to have shortness of breath and he passes out and it also triggers an asthma attack, coughing and shortness of breath that he deals with on a daily basis. (AR 253.) He also stated that simple chores cause him to have trouble breathing and he sometimes passes out. (AR 253.) On warmer days, his asthma is triggered, he coughs more and has shortness of breath. (AR 253.) This change occurred on January 9, 2014. (AR 253.)

Plaintiff was seen on January 16, 2014, for a check-up and to have his general relief paperwork completed. (AR 335.) Plaintiff reported dyspnea on exertion and shortness of breath with activity and that he had been using his albuterol inhaler 3 times a day for the last 4-5 months and nightly approximately three times a week. (AR 335.) He endorsed feelings of tight chest and wheezing, noting that he cannot work because he becomes weak and his muscles are tired and he feels like fainting. (AR 335.) Pulmonary examination revealed no wheezes, rales or rhonchi. (AR 337.)

/ / /

Plaintiff's next physical examination is with Dr. Rios on August 6, 2014. (AR 436-437.) Plaintiff reported that he had last been hospitalized in 2013 for an upper respiratory infection with exacerbation of his reactive airway disease. (AR 423.) He did not report any seasonal variations of his asthma, but noted that activities such as mowing his lawn triggered acute flare-ups. (AR 423.) Plaintiff used his inhaler daily. (AR 423.) Chest examination was symmetric with normal excursions, and clear to auscultation throughout. (AR 424.) Dr. Rios found that Plaintiff had a history of asthma that was clinically controlled with Plaintiff current treatment regimen. (AR 426.)

Nor do Plaintiff's subsequent medical records show a worsening of his respiratory condition. On December 11, 2014, Plaintiff reported he was doing well and physical examination showed no wheezes rales, or rhonchi. (AR 451-452.) Plaintiff was seen again on May 4, 2015, and reported that he had dyspnea on exertion with activity including yardwork as well as occasionally wanting to faint. (AR 456.) He was using his inhaler three times per day for a tight chest and wheezing. (AR 456.) But he denied waking at night to use his inhaler. (AR 460.) Plaintiff did have wheezing prominent in the bilateral upper lobes greater on the right than the left. (AR 548.) He had expiratory wheezing, rhonchi, and rales. (AR 458.) His medication was increased. (AR 460.)

Plaintiff thereafter had unremarkable pulmonary examinations other than some mild wheezing on September 15, 2015, and July 25, 2016. (AR 463, 469, 480, 482, 489, 495, 501, 527, 529, 539.) Substantial evidence supports the ALJ's finding that Plaintiff's respiratory symptoms did not worsen after January 2014.

The ALJ provided clear and convincing reasons to reject Plaintiff's symptom testimony.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in rejecting the general relief report completed by the treating physician or in evaluating Plaintiff's credibility.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be

entered in favor of Defendant Commissioner of Social Security and against Plaintiff Victor Manuel Vitela. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **December 27, 2018**

UNITED STATES MAGISTRATE JUDGE